UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MICHAEL SCOTT KELLER** | * | **CIVIL ACTION NO:** |
| | * | |
| **VERSUS** | * | **JUDGE:** |
| | * | |
| **LIBERTY LIFE ASSURANCE** | * | **MAGISTRATE JUDGE:** |
| **COMPANY OF BOSTON** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**COMPLAINT FOR DAMAGES**

The Complaint of plaintiff, Michael Scott Keller ("Keller"), a person of the full age of majority, domiciled in the State of Louisiana, and a resident of St. Tammany Parish, respectfully represents as follows:

**I.**

Made defendant herein is:

A. LIBERTY LIFE ASSURANCE COMPANY OF BOSTON ("LIBERTY MUTUAL"), a foreign corporation licensed to do and doing business in the State of Louisiana.

**STATEMENT OF JURISDICTION AND VENUE**

**II.**

This Court has jurisdiction over the matter pursuant to 29 U.S.C.A. § 1132(a), 29 U.S.C.A. § 1132(e)(I), and 28U.S.C.A. § 1331.

**III.**

Venue is proper in this district pursuant to 29 U.S.C.A. § 1132(e)(2), as the disability plan at issue was issued and administrated in this district, as defendant's corporate office located at Boston, Massachusetts.

**IV.**

Venue is proper in this district pursuant to 29 U.S.C.A. § 1132(e)(2), as the employee/claimant at all pertinent times herein was/is domiciled and resides in this district. In addition, the employee/claimant was employed in this district and was paid disability benefits in this district.

**FACTS**

**V.**

At all pertinent times herein, Michael Scott Keller was employed by Ochsner Clinic Foundation.

**VI.**

Keller was insured under a long term disability plan ("Plan") issued and/or administrated by Liberty Mutual.

**VII.**

The Plan issued and/or administered by Liberty Mutual is an ERISA plan. As such, the Plan is governed by 29 U.S.C.A. § 1001 *et seq.*

### VIII.

Keller submitted a claim for disability benefits for his absence at work as of February 13, 2015 due to multiple conditions and illnesses including cervical degenerative disc disease with radiculopathy, lumbar degenerative disc disease with radiculopathy, kidney stones and chronic pain.

### IX.

Defendant began paying long term disability ("LTD") benefits to Keller on or about August 12, 2015. LTD benefits were paid by defendant to Keller through August 11, 2017.

### X.

The events which led to Keller's disability began in 2014 when he developed symptomatic disabling kidney/renal stones. On August 15, 2014, Keller underwent a CT renal stone study which showed a 6mm proximal obstructive right renal stone with mild to moderate hydronephrosis on the right and intra renal stone bilaterally. The same test noted degenerative changes in the lumbar spine including significant degenerative changes at L5-S1. Pars defects could not be excluded.

### XI.

X-rays of the abdomen obtained on August 18, 2014 showed multiple stones in the left kidney, some of which were large. An incidental finding on the x-ray included degenerative changes of the spine. Keller was diagnosed with renal culi.

### XII.

On September 5, 2014, Keller was hospitalized and underwent surgery consisting of a right

ureteroscopy; laser lithotripsy; stone basket extraction; stent placement; retrograde pyelogram and fluoroscopy less than one hour. The hospital records noted a past medical history of lumbago with sciatica.

### XIII.

Keller continued to have problems with renal and kidney stones in late 2014. He underwent a repeat CT of the abdomen and pelvis on November 24, 2014 which showed two (2) ureteral stones with multiple renal stones bilaterally with an increase in stone burden since August 15, 2014. There was also some free pelvic fluid suggestive of inflammatory changes and an incidental finding of bilateral pars defects with interior listhesis at L5. He was diagnosed with renal calculus on the right and right ureteral calculus. An x-ray of the abdomen obtained December 1, 2014 showed three (3) calculi in the lower pole of the right kidney and three (3) large stones in the inferior pole of the left kidney which had increased in size.

### XIV.

Keller underwent a second surgical procedure on December 5, 2014 consisting of: 1. Right URS; 2. cystoscopy with right RGP; 3. cystoscopy with R JJ uretal stent placement; and 4. Fluoroscopy less than one hour. Keller underwent a third procedure on December 22, 2014 to remove the JJ stent.

### XV.

Keller continued to suffer from painful and disabling kidney stones. On December 30, 2014,

he underwent an ultrasound of the kidneys which showed mild, left-sided hydronephrosis which was a new finding in a patient with bilateral renal calculi.

## XVI.

Keller underwent additional studies in January of 2015 which showed: 1. obstructive left renal stone of 9mm at the ureteropelvic junction on the left with mild to moderate left-sided hydronephrosis and fats stranding; 2. numerous intrarenal stones bilaterally; 3. multiple colonic dyverticulum; and 4. several stable pulmonary nodules. The following day, Keller underwent another surgical procedure consisting of a left ESWL.

## XVII.

Keller again developed painful and disabling bilateral flank pain in February of 2015 and was diagnosed with bilateral stone disease. This led to another surgical procedure being performed on February 24, 2015 consisting of left ureteroscopy, laser desiccation of stones, basket extraction of fragments, placement of JJ stent and left ESWL.

## XVIII.

Keller's battle with painful and disabling kidney and renal stones and multiple surgical procedures resulted in an aggravation of his pre-existing degenerative lumbar condition with resulting symptoms of sciatica. A lumbar MRI obtained on March 5, 2015 showed multiple findings including advanced multilevel degenerative change in the lower lumbar spine resulting in multilevel central canal and neural foraminal stenosis, most pronounced at L4-5; right extra foraminal disc

protrusion L4-5 which exerted mass effect upon the exiting right L4 nerve; annular tear of the intervertebral disc at L4-5 and L5-S1; small central descending disc extrusion at L2-3; and small broad-based disc protrusion at L3-4. Keller was referred at that time to pain management for possible epidural steroid injections.

**XIX.**

On March 10, 2015, Keller underwent right L4-5 and L5-S1 transforaminal epidural steroid injections due to severe and disabling back pain and sciatica. The procedure resulted in only temporary mild relief. Dr. Harrison, in his March 23, 2015 progress note, notes that Keller continued to have severe pain in his right leg with numbness and tingling which has resulted in him dragging his leg.

**XX.**

On March 23, 2015, Keller underwent another surgical procedure consisting of a cystoscopy with removal of the bilateral ureteral stents. Keller underwent additional lumbar epidural steroid injections at L4-5 and L5-S1 on March 27, 2015 and April 20, 2015 in an attempt to relieve his severe and disabling back pain and sciatica.

**XXI.**

After the epidural steroid injections failed to provide any lasting relief, Keller was referred to a neurosurgeon. He underwent an EMG which showed chronic L3-L5 radiculopathy.

## XXII.

After failing conservative treatment, Keller underwent surgery on August 21, 2015, consisting of laminoforaminotomies to decompress the L4 and L5 nerve roots.

## XXIII.

Following the lumbar decompression surgery, Keller developed pain in both legs moving into the bilateral knees with associated paresthesias. In an effort to try and alleviate Keller's severe and disabling lumbar pain and sciatica, he underwent surgery on February 26, 2016 consisting of spinal cord stimulator placement.

## XXIV.

The spinal cord stimulator surgery initially provided some improvement in Keller's pain and symptoms. However, his low back and severe right leg pain continued. On May 6, 2016, he was diagnosed with chronic pain disorder; lumbar radiculitis and post laminectomy syndrome of the lumbar region. On July 11, 2016, Keller presented to his pain management specialist reporting some, but insufficient, relief from the spinal cord stimulator. He was still complaining of pain rated 7-8/10. Upon turning the stimulator off, he became nauseated from the pain. He reported being off balance. He also reported bilateral shoulder pain and numbness in his arms when he flexed his elbows completely. His treating pain management doctor scheduled a meeting with the spinal cord stimulator representative to help reprogram the unit.

## XXV.

In an effort to relieve Keller's severe and disabling pain, a caudal epidural steroid injection was performed on June 21, 2016. A lumbar CT scan was performed on July 11, 2016 which showed: 1. old congenital wedged deformity of T12; 2. T12-L1 vertebral end plate osteophytes with mild left foraminal stenosis; 3. new large L2-3 posterior ridging vertebral end plate osteophytes causing spinal stenosis and moderate bilateral foraminal stenosis; and 4. L3-4 minimal disc bulge and moderate bilateral foraminal stenosis.

## XXVI.

On July 15, 2016, Keller's treating pain management specialist notes that Keller had increasing back pain and bilateral leg pain and weakness. He was having difficulty picking up his feet at times. He was also complaining of continued bilateral shoulder pain. He had seen an orthopedic surgeon and felt that this was more of a cervical issue than a shoulder problem. Keller's pain management specialist interpreted the lumbar CT as showing a worsening of the stenosis and foraminal stenosis which accounted for the increased pain. He noted weakness in the bilateral legs. Additional surgery was discussed. A cervical CT was ordered.

## XXVII.

A CT of the cervical spine performed July 15, 2016 demonstrated significant degenerative changes including osteophyte formation; prominent left and right-sided uncovertebral and facet frontal narrowing with a suggestion of a left paracentral disc extrusion with moderate distortion of

the left internal canal and resulting in canal stenosis at C3-4; and posterior osteophyte formation and disc protrusion which produced moderate canal stenosis with prominent left and right uncovertebral and facet frontal narrowing at C6-7. Keller was now diagnosed with lumbar degenerative disc disease; lumbar spinal stenosis; bilateral lumbar radiculopathy; chronic pain disorder; and cervical degenerative disc disease. On September 9, 2016, Keller advised his pain management physician that his pain had worsened in his low back and bilateral legs. He was having difficulty walking any distance. He also reported severe neck pain radiating down into his arms, left worse than right, with numbness and weakness in the left hand. Cervical radiculopathy was added to his diagnosis. Keller further reported that although the stimulator helped some, it was not significant enough to where he could tolerate the pain. He inquired into whether or not there were any other lumbar surgical options. With respect to the neck, a cervical epidural steroid injection was recommended and performed on October 5, 2016.

## XXVIII.

Keller was examined by a neurosurgeon on November 8, 2016 to see if any additional surgery could help with his lumbar pain and sciatica. A repeat EMG and lumbar flexion and extension x-rays were ordered. The lumbar x-rays were performed on November 14, 2016 showing prominent mid and lower lumbar degenerative disc and facet disease with a transitional lumbosacral zone.

## XXIX.

Keller returned to see his pain management physician on January 23, 2017. In addition to his

severe and disabling neck and back symptoms with sciatica, he was also now suffering from thoracic pain.

### XXX.

Keller returned to see the neurosurgeon on February 7, 2017. The EMG showed chronic right L5 and S1 radiculopathy. He was diagnosed with chronic low back pain and chronic pain syndrome with neuropathy of the lower extremities. He was advised by the neurosurgeon that any additional surgery would be too extreme and would be too risky given the amount of degenerative disc disease in his lumbar spine.

### XXXI.

Keller continues to seek treatment for his severe and disabling pain from his pain management specialist consisting of periodic epidural steroid injections.

### XXXII.

On August 28, 2017, Keller's pain management specialist issued a report noting that Keller continues to suffer from back pain, leg pain and neck pain from the following diagnoses: 1. lumbar degenerative disc disease at multiple levels; lumbar radiculopathy; lumbar facet hypertrophy; cervical degenerative disc disease; cervical stenosis and cervical radiculopathy. Due to the severity of his complaints, he may require future surgery. The doctor further notes that Keller is not fit for gainful employment due to the aforementioned diagnoses. He is limited in his ability to sit or stand

for any significant amount of time without worsening pain. In addition, the doctor notes that he is taking pain medication in the form of Percocet which may further impair his ability to focus and concentrate during a work day, in addition to the pain he is experiencing.

### XXXIII.

By a decision dated July 27, 2017, the Social Security Administration concluded that Keller was disabled and that his disability dated back to February 13, 2015.

### XXXIV.

By a decision dated July 12, 2017, Liberty Mutual erroneously concluded that Keller did not meet the definition of "disability" or "disabled" which would indicate that the insured is unable to perform the material and substantial duties of any occupation. "Any occupation" is defined as any occupation that a covered person is or becomes reasonably fitted by training, education, experience, age, physical, mental capacity and which provides the covered person with substantially the same earning capacity as the covered persons former earning capacity prior to the start of disability. As a result, Liberty Mutual terminated Keller's long-term disability benefits effective on or about August 11, 2017.

### XXXV.

By correspondence dated September 7, 2017, Keller appealed Liberty Mutual's decision. As part of appeal, he attached additional medical records and reports as well as the Social Security Administration's decision dated July 27, 2017 as well as other documents received from the Social

Security Administration. As part of his appeal, Keller's attorney encouraged Liberty Mutual to sit down and interview Keller, suggesting that if it did so, it would be more than apparent that Keller is unable to engage in any gainful employment. Counsel suggested that the favorable decision Keller received from the Social Security Administration Law Judge was due to the fact that the Administrative Law Judge and Social Security appointed vocational rehabilitation consultant had the opportunity to witness and hear Keller's testimony. It was also pointed out that Keller's reported educational accomplishments were misleading.

## XXXVI.

In correspondence dated September 21, 2017, Keller's attorney provided Liberty Mutual with additional medical records and reports regarding treatment Keller received in 2017. By correspondence dated November 6, 2017, Keller's attorney provided Liberty Mutual with additional medical records and progress notes regarding treatment Keller received in 2017.

## XXXVII.

In correspondence dated November 30, 2017, Liberty Mutual again denied Keller's claim for long-term disability benefits, erroneously concluding that Keller failed to prove his continued disability in accordance with the policy provisions. In denying Keller's claim for long-term disability benefits, Liberty Mutual ignored the holding of the Social Security Administrative Law Judge that Keller was, in fact, disabled. Liberty Mutual ignored the opinion of Keller's treating pain management specialist who also concluded that Keller was not fit for gainful employment. Liberty

Mutual also ignored Keller's request that Liberty Mutual interview him so that they could witness first-hand his pain and various disabilities. Keller has been told by his treating physicians that he has a spine equivalent to an 80 year old man.

### XXXVIII.

Pursuant to 29 U.S.C.A. § 1132 (a)(1)(b), Keller is entitled to recover past due and future long-term disability benefits which are owed to him under the plan.

### XXXIX.

Additionally, pursuant to 29 U.S.C.A. § 1132 (g)(1), plaintiff is also entitled to recover reasonable attorney's fees and costs incurred in bringing this matter, due to Liberty Mutual's bad faith and arbitrary and capricious behavior in handling plaintiff's claim. Additionally, Liberty Mutual's denial of long-term disability benefits to Keller was in direct violation of LSA-R.S. 22:1821. As such, Keller is entitled to penalties equal to double the amount of the benefits due to him under the terms of the insurance contract and attorney's fees.

### XL.

Further, as a result of Liberty Mutual's failure to provide coverage for long-term disability benefits under the plan to Keller, Keller has suffered severe emotional and mental anguish and seeks compensatory damages for his emotional distress.

**WHEREFORE**, claimant, MICHAEL SCOTT KELLER prays that he be allowed to file this complaint, that he be allowed to serve a copy of the complaint on defendant, LIBERTY LIFE

ASSURANCE COMPANY OF BOSTON, and that after due proceeding are had, there be judgment in favor of claimant and against defendant in an amount reasonable in the premises, along with legal interest, in addition to attorney's fees and costs incurred as well as all general and equitable relief as the law may allow and the nature of the case may permit.

    Respectfully submitted:

    **KELLER & TRAHANT, L.L.C.**

    *John A. Keller*
    **JOHN A. KELLER (#18281)**
    506 Water Street, Suite B
    Madisonville, Louisiana   70447
    Telephone: (985) 845-0356
    Facsimile: (985) 845-9703
    **Counsel for plaintiff:**
    **Michael Scott Keller**